United States Bankruptcy Court
Southern District of Texas
**ENTERED**
March 25, 2025
Nathan Ochsner, Clerk

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 19-32713 |
| BRISTOW GROUP INC., *et al.*, | § | |
| | § | CHAPTER 11 |
| Debtors. | § | |
| | § | |
| BRISTOW GROUP INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 19-3691 |
| | § | |
| SIKORSKY AIRCRAFT CORPORATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

Bristow seeks an order requiring production of documents claimed by Sikorsky to be protected by attorney client and work product privileges. The Court has completed its *in camera* review of those documents.

The Court orders production of certain documents reviewed *in camera*.

## BACKGROUND

### I. FACTUAL BACKGROUND

This adversary proceeding concerns a breach of contract dispute between Bristow Group Inc. and Sikorsky Aircraft Corporation. The parties have been engaged in this litigation since 2019. Phase one of trial commenced in August 2023 before the matter was transferred to this Judge. Phase two of trial commenced on April 22, 2024. On that

date, Sikorsky's attorney and its principal witness made false statements to the Court. This adversary proceeding has been abated for Bristow to pursue its sanctions motion.

### A. The Underlying Dispute

Bristow and Sikorsky have done business together for 50 years. ECF No. 355 at 92. Bristow operates helicopters and other aircraft in twenty countries. ECF No. 349 at 70. Sikorsky manufactures helicopters. ECF No. 355 at 28. Bristow has purchased helicopters from Sikorsky for both search and rescue and oil and gas services.

In 2012, the parties entered a sales agreement for ten helicopters, with an option for Bristow to purchase an additional sixteen helicopters. ECF No. 324-1 at 18. There were two delivery phases for each helicopter: baseline delivery and final delivery. ECF No. 324-1 at 4–6. At baseline delivery, Bristow would inspect the initial build of the helicopter and sign a certificate of acceptance. ECF No. 324-1 at 5. Sikorsky would then complete the helicopter for final delivery. If the helicopter passed Bristow's inspection at final delivery, Bristow was to complete a certificate of acceptance and pay the final invoice. ECF No. 324-1 at 6. In total, Sikorsky delivered fifteen helicopters to Bristow between 2012 and 2018. ECF No. 355 at 93.

On July 1, 2014, Bristow notified Sikorsky it would exercise the sixth option ("Helicopter 16") on July 1, 2014. ECF No. 324-1 at 129. Helicopter 16's originally planned final delivery date[1] was April 2015. ECF No. 324-1 at 23. After the oil and gas downturn in 2014, the parties pushed back the baseline delivery and final delivery dates of the Helicopter 16. ECF No. 324-1 at 72.

On July 15, 2016, the parties executed Amendment 21 to the 2012 Agreement. ECF No. 324-1 at 318. It is disputed whether Amendment 21 set a baseline delivery date. But it is undisputed that Amendment

---

[1] The parties use the term "final delivery date" and "completion date" interchangeably. For clarity, this opinion exclusively uses the term "final delivery". Quoted testimony leaves intact the witness's interchangeable use of the terms.

21 required final delivery of Helicopter 16 to be no later than December 2018. ECF No. 324-1 at 317. The parties continued to negotiate the delivery dates of Helicopter 16 in 2017 and 2018. The negotiations led to the proposed Amendment 23 to the 2012 Agreement. ECF No. 352 at 155. But Amendment 23 was never signed. ECF No. 352 at 156. The parties do not dispute that Amendment 21, which required a final delivery date of no later than December 2018, remained operative. During negotiations, Sikorsky and Bristow never set a baseline delivery date, which is typically about six months before the final delivery date. In November and December 2018, Sikorsky sent Bristow letters, indicating it was deeming the 2012 Agreement terminated and keeping the approximately $11,000,000 deposit Bristow put down.

Neither final delivery nor a tender of final delivery was made by Sikorsky.

Bristow seeks return of the $11,000,000 deposit.

### B.   Gretchen Maton's Trial Testimony

On April 22, 2024, Maton testified as a fact witness at trial. Maton is a licensed attorney in Connecticut and New York. Case No. 19-32713, ECF No. 1079 at 6. Maton worked for Sikorsky from February 2010 to April 2021. Case No. 19-32713, ECF No. 1079 at 7. Maton began in an in-house counsel role and became Director of Contracts in 2018. Case No. 19-32713, ECF No. 1079 at 7. Maton oversaw the drafting of Amendment 21 and the 2018 letters when the alleged breach of the 2012 Agreement occurred.

Maton was deposed twice in this case: in October 2020 as a Rule 30(b)(6) witness, and in July 2022. In her 2020 deposition, Maton testified: "the green delivery date for the helicopter in the contract was June 2017." Case No. 19-32713, ECF No. 1079 at 19. The green delivery date refers to the baseline delivery date. Maton reviewed the transcript of her deposition after and signed under penalty of perjury that it was true and accurate. Maton later provided and signed an errata sheet

correcting the July 2017 date to June 2018. Case No. 19-32713, ECF No. 1079.

At the April 22, 2024 Trial, Maton testified that she was wrong about the date. Maton testified that Amendment 21 did not set the baseline delivery date for Helicopter 16, rather it laid out the process for mutually agreeing on a delivery date. Bristow's counsel impeached Maton on this issue.

Bristow's counsel then asked Maton several questions about when she realized her deposition testimony was incorrect. Case No. 19-32713, ECF No. 1079 at 22. Maton first testified that she realized she was wrong after she read the contract in preparation for her testimony. Case No. 19-32713, ECF No. 1079 at 22–23. When Bristow asked her what date she made this realization, Maton testified that it was after her deposition but she could not pinpoint a timeframe. Case No. 19-32713, ECF No. 1079 at 23.

Later in the hearing, the Court asked Maton about when she decided that her Rule 30(b)(6) deposition was incorrect. Case No. 19-32713, ECF No. 1079 at 163. She testified that it was after she looked at the contract and realized she made a mistake. The Court asked her when she made that realization. Maton testified that she did not know. After numerous questions, the Court was able to narrow the time range regarding her realization of the mistake between August 28, 2023 and April 22, 2024. But Maton still could not remember when in those several months she told Sikorksy's counsel about her change in testimony. Case No. 19-32713, ECF No. 1079 at 166.

Sikorsky's counsel, Mr. White, then stated to the Court that counsel realized that Maton's deposition testimony was incorrect within a week prior to trial. Case No. 19-32713, ECF No. 1079 at 167–68. Mr. White stated that they asked Maton to review her deposition testimony as part of her trial preparation. Case No. 19-32713, ECF No. 1079 at 168. At that point, Mr. White became aware of Maton's incorrect deposition testimony. Case No. 19-32713, ECF No. 1079 at 169. Mr.

White said that Sikorsky anticipated that Maton would be questioned about the issue, and that he told Maton to tell the truth.

> THE COURT: So my question to you is, when did you learn and why didn't you communicate, and did you communicate it to the other side?
>
> MR. WHITE: It was not communicated to the other side. As part of the preparation, literally within the last week, we were obviously looking through Ms. Maton's deposition testimony, and as part of the prep sessions for those deposition testimony, we asked Ms. Maton, go back and look through your deposition testimony.

Case No. 19-3691, ECF No. 1079 at 167–68.

## II. PROCEDURAL BACKGROUND

On May 20, 2024, Bristow filed its Motion for Sanctions and Discovery. ECF No. 402.

On May 21, 2024, the Court entered its Case Management Order, which abated this adversary proceeding and set deadlines for pleadings related to the sanctions motion. ECF No. 404.

On June 10, 2024, Sikorsky filed its Objection to Bristow's Motion for Sanctions and Discovery. ECF No. 408.

On June 17, 2024, Bristow filed its Reply in support of its Sanctions Motion. ECF No. 412.

On June 24, 2024, the parties filed their joint statement on discovery. ECF No. 413.

On July 17, 2024, the Court entered an order requiring Sikorsky to respond to Bristow's discovery request. ECF No. 418.

On August 19, 2024, Sikorsky filed its Motion for Discovery. ECF No. 422.

On August 25, 2024, Bristow filed its Motion to Compel and Request for In Camera Review. ECF No. 424.

On August 30, 2024, Bristow filed its Opposition to Sikorsky's motion for discovery and motion for attorneys' fees. ECF No. 429. On September 13, 2024, Sikorsky filed its Reply in support of its motion for discovery. ECF No. 439.

On September 27, 2024, Sikorsky filed its Letter to the Court under seal. ECF No. 444.

On September 30, 2024, Sikorsky filed its objection to Bristow's Motion to Compel and Request for In Camera Review. ECF No. 445.

On October 7, 2024, Bristow filed its Reply to its Motion to Compel and Request for In Camera Review. ECF No. 448.

On October 22, 2024, the parties entered into a stipulation to abate further actions relating to the sanctions motion until November 19, 2024 while the parties worked towards a settlement. ECF No. 451.

On November 19, 2024, the parties informed the Court that they failed to reach a settlement. ECF No. 454.

On February 21, 2025, the Court entered an order requiring *in camera* review and denying Sikorsky's motion for discovery. ECF No. 456.

## JURISDICTION

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a). Venue is proper in this District pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2). The bankruptcy case was referred to the Bankruptcy Court under General Order 2012-6.

## DISCUSSION

Bristow seeks production of documents claimed by Sikorsky to be privileged. Sikorsky's privilege logs describe almost all these documents to be protected by attorney client privilege and the work product doctrine.

Attorney-client privilege protects confidential communications between a client and their lawyer for the purpose of obtaining legal advice. *S.E.C. v. Brady*, 238 F.R.D. 533, 536 (N.D. Tex. 1993). Its purpose is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

The work product doctrine affords broader protection than the attorney client privilege because it extends beyond client communications. *United States v. Nobles*, 422 U.S. 225, 238 (1975). The work product doctrine protects from discovery materials prepared by the attorney in anticipation of litigation. F<small>ED</small>. R. C<small>IV</small>. P. 26(b)(3). This includes analysis of legal theories, legal research, mental impressions, notes, and memoranda of witnesses' statements. *Brady*, 238 F.R.D. at 441. The doctrine "promotes the adversary system by safeguarding the fruits of an attorney's trial preparation from the discovery attempts of an opponent." *Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989).

The privileges are not absolute and can be waived by the application of the crime-fraud exception. *In re E.E.O.C.*, 207 F. App'x 426, 434 (5th Cir. 2006). "Privilege is overcome when an attorney-client communication or work product is intended to further continuing or future criminal or fraudulent activity." *Id.* The exception is not triggered solely by statutory crimes. It can include wrongdoings—like fraud on the court—that do not fall into paradigmatic definitions of criminal fraud. *See In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1039 (2nd Cir. 1984) ("If the advice was sought in furtherance of a fraud that is not necessarily a violation of the criminal code, the

communication is nonetheless unprivileged."); *see also In re St. Johnsbury Trucking Co., Inc.*, 184 B.R. 446, 456 (Bankr. D. Vt. 1995) ("We believe that the principle served by both the attorney-client privilege and the crime-fraud exception is that communications *in furtherance of some sufficiently malignant purpose* will not be protected." (emphasis added)).

The party seeking to uncover privileged communications must establish a prima facie case that the attorney-client relationship was intended to further criminal or fraudulent activity. *Id.* Whether a crime or fraud has actually been committed is not the relevant inquiry for overcoming privilege. *Gutter v. E.I. Dupont De Nemours*, 124 F.Supp.2d 1291, 1304 (S.D. Fla. 2000). All that is required is "evidence, that if believed by a trier of fact, would establish the elements of some violation that was ongoing or about to be committed." *In re Grand Jury Investigation (Shroeder)*, 842 F.2d 1223 (11th Cir. 1987). There must be sufficient evidence of wrongdoing to call into question the nature of the privileged material. *Matter of Feldberg*, 862 F.2d 622, 625–26 (7th Cir. 1988).

Here, Bristow argues that the crime-fraud exception applies to the privileged documents that it seeks in discovery for its sanctions motion. Bristow alleges that Sikorsky—through Maton's trial testimony—committed the following wrongdoings: fraud on the court, perjury, and subornation of perjury. Any of these wrongdoings, if properly demonstrated, are sufficiently serious to defeat privilege.

Bristow provides the Court with an appendix comparing Maton's testimonies as a Rule 30(b)(6) witness and fact witness at trial. *See* ECF No. 402-1. A sample of these are summarized here.

- At the 2020 deposition, Maton was asked about her interpretation of Amendment 21 to the 2012 Sales Agreement. Maton testified that the "contract makes clear that the green delivery date is June 2018, and that the

completion delivery date was December of 2018 . . . ." ECF No. 402-1 at 1.

- o At trial, Maton was asked multiple times whether Amendment 21 set the delivery dates for Helicopter 16. Maton responded: "Not the baseline delivery date and not the completion delivery date" and "No, its TBD." ECF No. 402-1 at 13.

- At the 2020 deposition, Maton described the November 9, 2018 letter as a "notice of [Bristow's] failure to take delivery and acceptance of the aircraft" after Bristow failed to take green acceptance of Helicopter 16 in June of 2018. ECF No. 402-1 at 15.

  - o At trial, Maton stated that the purpose of the letter was "to notify Mr. Underwood that [Sikorsky] deemed the basically inaction of Bristow in setting the baseline delivery date for the helicopter to be a default because it prevented [Sikorsky] from being able to perform [its] obligation to deliver a completed helicopter." ECF No. 402-1 at 15. Maton testified that the letter suggested a baseline delivery date of November 16, 2018. Case No. 19-32713, ECF No. 1079 at 140.

- At the 2020 deposition, Maton stated: "I reviewed Bristow contract with – Bristow/Sikorsky contract with a end number of 9196. I also reviewed the Uzbekistan contract between Uzbekistan and Sikorsky, and a number of – there were a couple of additional Bristow contracts in the – litigation." ECF No. 402-1 at 20.

  - o At trial, Sikorsky's counsel stated: "And Ms. Maton just told us at that time that she thought that she had not— she was not familiar with the contract at the time when she was deposed." ECF No. 402-1 at 20.

- At trial, Maton was asked about her contemporaneous understanding in 2018 regarding whether the contract set June 2018 as the baseline delivery date. Maton responded: "No." ECF No. 402-1 at 10.
  - This testimony directly contravenes her 2020 deposition testimony where she testified under oath that the contract set June 2018 as the baseline delivery date.

These are glaring contradictory testimonies coming from a Rule 30(b)(6) and material fact witness. Bristow claims that Sikorsky orchestrated Maton's change in testimony to support its new legal arguments in advance of phase two of trial. To be sure, a change in rule 30(b)(6) testimony alone is not sufficient evidence of wrongdoing to trigger the crime-fraud exception. *See United States v. Holladay*, 566 F.2d 1018, 1019 (5th Cir. 1978) ("Presentation of a witness who recants or contradicts his prior testimony is not to be confused with eliciting perjury."). The Court, however, found that Maton gave false testimony when she repeatedly testified that she could not recall to the Court when she decided that her deposition testimony was incorrect.

| | |
|---|---|
| THE COURT: | Ms. Maton, about when, roughly when did you decide that your deposition testimony was incorrect? |
| MATON: | After I went back and looked at the contract and I realized I made a mistake. |
| THE COURT: | About when was that? |
| MATON: | I honestly don't know. I can't remember if it was while [I] was still employed with Sikorsky. |
| THE COURT: | Well, you gave your deposition in July of '22, and you'd already left – |
| MATON: | I did. |

| | |
|---|---|
| THE COURT: | – in April of '21. So had you known this correction – did you know it by the time you gave your July of '22 deposition? |
| MATON: | No, I didn't go back – |
| THE COURT: | So it was after July of '22. |
| MATON: | Yeah. |
| THE COURT: | So you were no longer employed by – |
| MATON: | Sikorsky at that time, correct. |
| THE COURT: | Sikorsky. What made you go back and look at the contract? |
| MATON: | I knew I'd have to testify here eventually. |
| THE COURT: | And when you realized you'd made a mistake, who did you tell? |
| MATON: | Counsel. |
| THE COURT: | Sikorsky's counsel? |
| MATON: | Yes. |
| THE COURT: | About when did you tell them? |
| MATON: | Honestly, I don't know when I told them. |
| THE COURT: | Was it before or after this trial started? |
| MATON: | Certainly after the trial started. |
| THE COURT: | So after this trial started is when you told Sikorsky's counsel that you made an error in your deposition. |
| MATON: | I didn't say specifically that I made an error. I just knew that it wasn't correct. I had gotten the dates wrong. It was a total disaster. |
| THE COURT: | So, once again, I'm trying to figure out when. |

| | |
|---|---|
| MATON: | Right. |
| THE COURT: | Was it after this trial started? |
| MATON: | Yeah, definitely after the trial started. I realized I didn't correct it and I had submitted the errata and it was wrong. |
| THE COURT: | So I'll have to look. But I think this trial started in August of 2023. |
| MATON: | Right. |
| THE COURT: | Okay. So sometime between August 2023 and today, you notified counsel of the mistake? |
| MATON: | When I looked at the documents in preparation, all the documents that were in the file as exhibits, [I] noticed that it was incorrect. |
| THE COURT: | and that was sometime – |
| MATON: | After. |
| THE COURT: | I'm not trying to put words in your mouth. I'm trying to tie down the date. It was sometime between August 2023 and today. |
| MATON: | Yes. |
| THE COURT: | And you have no idea? That's only about an eight-month time period. |
| MATON: | No. |
| MR. WHITE: | I will say that the issue of when I first look at that testimony about when baseline delivery is, there's plenty of documents and other things in the case saying June 2018. My view of the situation was, Ms. Maton told me, is her interpretation of what the contract is or what it isn't, the |

> contract sort of stands for itself. So I knew that she was going to come in, they were going to question her about this issue. And all I indicated to Ms. Maton is, listen, tell the truth honestly, do not try to get your position as you understand it now that you reviewed the contract. I knew that she would impeached, as she was –
>
> THE COURT: This makes no sense. She's telling me she can't remember over the eight-month period. And you're telling me it's within the last seven days.

Case No. 19-32713, ECF No. 1079 at 165–68.

It is inconceivable that Maton—a sophisticated and articulate witness—did not have any idea within an eight-month period when she realized her prior deposition testimony was wrong. The privilege logs and Sikorsky's counsel confirm that she prepared extensively to be called as a witness in the weeks leading up to trial. Yet she told the Court she could not remember within an eight-month period when she decided that her prior testimony was wrong. Maton's numerous contradictory testimonies coupled with her false testimony suggests to the Court a degree of impropriety that amounts to wrongdoing sufficient to pierce the privileges.

About five months after the April 22 trial, and after Bristow requested an *in camera* review of documents, Sikorsky provided a sealed *Letter to the Court*. ECF No. 444.

The letter contains a troubling revelation: Sikorsky's counsel was not truthful when he stated that he learned of the change of testimony within seven days of trial. Mr. White was asked at trial when he learned about Maton's change in testimony and why he did not communicate the change to Bristow. Mr. White responded:

> It was not communicated to the other side. As part of the preparation, **literally within the last week**, we were obviously looking through Ms. Maton's deposition testimony, and as part of the prep sessions for those deposition testimony, we asked Ms. Maton, go back and look through your deposition testimony. Is there anything in there that is not correct, inaccurate, that you wish to modify or change, and that's when that information became aware to us.

Case 19-32713, ECF No. 1079 at 168–69 (emphasis added). Mr. White later at trial confirms: "And so, Your honor, I would tell you that this has all been happening relatively quickly, within the last, you know, week or so, as we were preparing her for trial." Case No. 19-32713, ECF No. 1079 at 169.

Sikorsky's letter states that Mr. White's representation to the Court was not "factually accurate." ECF No. 444. The letter purports to clarify that Sikorsky reviewed Maton's prior deposition transcript and communicated with Maton regarding Amendment 21 as early as September 2023. ECF No. 444. The Court's *in camera* review of documents in Sikorsky's privilege logs confirms the letter's timing of events. Indeed, one of the documents that the Court now orders to be produced to Bristow is a March 18, 2024 (i.e., approximately 6 weeks before trial) text message from Mr. White to Maton that reads: "Here is your testimony. The contract said mutual agreement. We never got it."

Sikorsky's letter does not rectify its previous misstatements and lack of candor. The letter was filed five months after trial, and two months after the Court required Sikorsky to respond to Bristow's discovery requests regarding the sanctions motion. Given the possibility that Sikorsky may be compelled to turn over documents containing privileged communications, Sikorsky's disclosure at the eleventh hour does little to persuade the Court of its candor.

Based on this set of facts and documents reviewed *in camera*, the Court finds that there is sufficient evidence of wrongdoing to pierce the privileges over certain documents under the crime-fraud exception.

Maton repeatedly proffered contradictory testimony over material factual issues and then falsely testified about the timing of her change of heart. Mr. White made a false representation, which Sikorsky admits five months after trial, to the Court. Under the circumstances, these misrepresentations are sufficient evidence of some fraudulent conduct.

Bristow is allowed to pursue its sanctions claim without discovery roadblocks on the issues it has identified. Both attorney-client privilege and work product protection are waived for documents relating to the timing and circumstances surrounding Maton's change in testimony. *See In re Burlington Northern, Inc.*, 822 F.2d 518, 525 (5th Cir. 1987) (narrowing the application of the crime-fraud exception to communications and documents that serve an illegitimate purpose).

## CONCLUSION

A separate order identifying the documents to be turned over will be entered.

SIGNED 03/25/2025

_____
Marvin Isgur
United States Bankruptcy Judge